IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | |
|---|---|
| AVONDALE MILLS, INC. AND ) <br> FACTORY MUTUAL INSURANCE CO., ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> NORFOLK SOUTHERN CORPORATION, ) <br> AND NORFOLK SOUTHERN RAILWAY ) <br> COMPANY, ) <br> ) <br> Defendants. ) <br> ) | CIVIL ACTION <br> NO. 1:05-CV-2817-MBS |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT
NORFOLK SOUTHERN'S MOTION *IN LIMINE* [D.E. # 975] TO EXCLUDE
EVIDENCE RELATING TO AVONDALE'S ALTERNATIVE THEORY OF
DAMAGES, INCLUDING CERTAIN WITNESS TESTIMONY AND OPINIONS
<u>OF AVONDALE MILLS' EXPERT WITNESS, HAROLD V. MEYER</u>**

Plaintiffs Avondale Mills, Inc. ("Avondale") and Factory Mutual Insurance Company ("FM") (collectively "Plaintiffs") hereby file this Response in Opposition to the Motion *In Limine* to Exclude Evidence Related to Avondale's Alternative Theory of Damages, Including Certain Witness Testimony and Opinions of Avondale Mills' Expert Witness, Harold V. Meyer (the "Motion") [D.E. # 975] filed by Norfolk Southern Corporation and Norfolk Southern Railway Company (collectively "Norfolk Southern" or "Defendants"). The evidence and testimony challenged here should not be excluded. Norfolk Southern already has raised these issues with the Court, and the Court has ruled in Avondale's favor. For this reason, and for the reasons stated below, the Court should deny this duplicative and unnecessary Motion.

## FACTUAL AND PROCEDURAL BACKGROUND

As the Court well knows, this case arises out of the tragic events of January 6, 2005, when two Norfolk Southern trains collided on Avondale's property. One of those trains carried chlorine, which quickly escaped from Norfolk Southern's tank car and saturated Avondale's facilities and the surrounding community. The deadly gas killed nine people, injured hundreds more and destroyed Avondale's business and property. As a consequence, Avondale was forced to bring this lawsuit.

Norfolk Southern has once again moved this Court to exclude the expert testimony and opinions of Harold Meyer, an Avondale expert who offers opinions on the value of Avondale's damaged property, as measured by repair and replacement costs. Meyer's opinions were submitted in rebuttal to Norfolk Southern's expert (McClellan) who purported to measure Avondale's property damage based on the fair market value of the property. Norfolk Southern seeks to reargue that Mr. Meyer's repair and replacement measure of damages is not the appropriate measure of damages in this case.

In its Motion, Norfolk Southern contends that 1) because Avondale's alternative theory of damages based on the repair and/or replacement cost of all of Avondale's equipment is allegedly not the appropriate measure of damages in this case, the theory must be excluded, 2) Avondale should be forced to elect which damages theory it intends to pursue at trial, and 3) certain of Mr. Meyer's testimony and opinions should be excluded as unreliable. Norfolk Southern raised substantially the same issues in its Motion to Exclude the Expert Testimony of Harold V. Meyer [D.E. # 578] and its Motion for Partial Summary Judgment as to Plaintiff's Claim for Repair and/or Replacement Cost [D.E. # 584]. The Court denied both motions on September 7, 2007 and September 17, 2007, respectively. *See* Sept. 7, 2007 Hr'g Tr. [D.E. #

742] and Sept. 17, 2007 Hr'g. Tr. [D.E. # 795]. Apparently not satisfied with these rulings, Norfolk Southern has filed this Motion, seeking to reargue its positions. Because Defendants' arguments are equally as meritless today as they were in September, the Court should deny this Motion.

## ARGUMENT AND CITATION OF AUTHORITIES

### I. Norfolk Southern's Motion in Limine Should be Denied as an Improper Motion for Reconsideration

To the extent Norfolk Southern seeks reconsideration of the Court's prior rulings, its Motion is untimely. Motions for reconsideration, which are not expressly contemplated by the Federal Rules, should be treated similarly to motions to alter or amend a judgment under Rule 59. *See Ray v. Evercom Sys., Inc.,* No. 4:05-2904-RBH, 2006 WL 2475264, at *1 (D.S.C. Aug. 25, 2006). Rule 59 requires that a motion to reconsider be filed within 10 days "after the entry of judgment." Fed. R. Civ. P. 59(e). "The ten day deadline contained in Rule 59(e) is mandatory and cannot be extended. . . ." *S. Holdings, Inc. v. Horry County*, No. 4:02-cv-1859-RBH, 2007 WL 1960590, at *3 (D.S.C. July 3, 2007). As more than ten days have passed since the Court's rulings on September 7 and 17, 2007, Norfolk Southern's Motion is untimely and must be denied. Moreover, even if timely, Norfolk Southern's Motion should be denied because Defendants have not satisfied any of the three grounds necessary for reconsideration. Specifically, Norfolk Southern has not identified an intervening change in the controlling law, new evidence that was previously unavailable, or a clear error of law or manifest injustice. *See Pac. Ins. Co. v. Am. Nat. Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998) (identifying the three grounds for amending an earlier judgment) *see also Ellison v. Rehab. Servs. of Columbus*, No. 3:06-1053-CMC, 2006 WL 3192543, at *1 (D.S.C. Nov. 1, 2006) (denying plaintiff's motion for reconsideration of an order on a partial motion for summary judgment because plaintiff failed to

3

show that there had been a change in controlling law or that the court made a clear error of law). Simply put, Norfolk Southern's Motion, which seeks nothing more than to revisit the Court's prior rulings, is untimely and unfounded.

> **II. Meyer does not State an Improper Legal Conclusion Regarding the Appropriate Measure of Damages.**

Norfolk Southern again argues that Mr. Meyer's statement that "[r]eplacement cost is the appropriate valuation methodology for measuring the damage to Avondale's machinery, equipment and property caused by the chlorine contamination" (Motion at 4 (citing Meyer Rebuttel Rpt. at 2, 12)) should be excluded as an improper legal conclusion. Norfolk Southern notes that the proper measure of damages is a question of law to be decided by the Court. Motion at 4.

Notwithstanding the fact that the Court has decided this issue (Hr'g. Tr., Sept. 7, 2007), and that Norfolk Southern has failed to demonstrate why the Court's ruling should be reconsidered, Mr. Meyer's statement regarding replacement cost as the appropriate measure of damage is not a legal conclusion. As Avondale previously explained in its Response in Opposition to Norfolk Southern's Motion to Exclude the Expert Testimony of Harold V. Meyer [D.E. # 634], Mr. Meyer's expert report and testimony merely provide what he believes, *factually*, to be the appropriate amount of money required to return Avondale's equipment to its pre-derailment condition. Neither Avondale, nor Mr. Meyer, have ever disputed the Court's authority to *legally* determine the appropriate measure of damages in this case.

Moreover, Mr. Meyer's Rebuttal Report directly rebuts McClellan's calculation of Avondale's damages. *See* Expert Rebuttal Report of Harold V. Meyer, dated March 23, 2007 [DE #s 370-371]. In his report, Mr. McClellan calculated the alleged fair market value of Avondale's equipment, defined as "the replacement cost of property damaged or destroyed at the

4

time of loss," which "cannot exceed the amount it would cost to repair or replace such property with material of like kind and quality within a reasonable amount of time after a loss." Expert Report of Doran McClellan, dated Jan. 15, 2007, at 7 [D.E. # 534]. Relying upon various assumptions, Mr. McClellan estimated the market value of Avondale's assets before and after the derailment. *Id*. at 31. The fatal flaw in McClellan's report is that his definition of fair market value is based on the erroneous assumption that a market existed for Avondale's unique equipment as it was operating and in place prior to the derailment and chlorine damage - or, that there could be "a hypothetical willing and able buyer and a hypothetical willing and able seller" for Avondale's property. *Id*. at 7.

Recognizing that there was, in fact, no market for Avondale's equipment, Mr. Meyer concluded that "[t]he valuation of Avondale's machinery, equipment and property referred to in the McClellan Report and the methodology used to derive those values is flawed." Report at 1. More specifically, Meyer evaluated the damage to Avondale's equipment as "the cost reasonably necessary to repair the machinery, equipment and property if [it] could be repaired and returned to its pre-incident condition," or the replacement cost if such repairs could not be performed. *Id*. The methodology used by Meyer determines the amount of loss sustained to the equipment as a result of the chlorine contamination by determining the amount Avondale would have to pay to either restore the equipment to its pre-derailment condition or replace the equipment if it could not be repaired. As such, Mr. Meyer's opinions explain what he believes to be the appropriate amount of money required to return Avondale to its pre-derailment condition.

Plaintiffs have the right -- and, indeed the obligation -- to present facts from which the jury can make the necessary factual determinations in this case. Accordingly, as an expert in this case, Mr. Meyer must be allowed opine on to the unique qualities by Avondale's machinery and

5

why he believes repair and replacement costs represent an appropriate measure of the damage sustained by Avondale. Once those facts are in evidence, the jury may apply those facts to the law on damages, as outlined by the Court. Norfolk Southern's attempt to preclude relevant facts is inappropriate. Therefore, Mr. Meyer's statement regarding replacement cost as an appropriate measure of damage should be admitted, and Norfolk Southern's Motion should be denied.

### III. Evidence, Statements and Arguments Supporting Repair and Replacement Cost as the Appropriate Measure of Damages is Relevant and Admissible.

The Court has already determined that, when there is no market for damaged property, repair and replacement cost is appropriate to demonstrate the value of the damaged property. Hr'g Tr., Sept. 17, 2007. Nevertheless, Norfolk Southern disputes the *factual* premise that no market exists and, therefore, Defendants again assert that "repair and replacement cost is not available as a measure of damages in this case." Motion at 8.[1] Defendants contend that repair and replacement should only be used as a factor in assessing the upper limit of Avondale's damages. Motion at 6. Repair and replacement cost is an appropriate measure of damages, however.

As a matter of South Carolina law, the best measure of the actual value of Avondale's damaged equipment is the cost to repair or replace the equipment, because there is no market for the equipment at issue. *See Duke Power Company v. Thornton*, 303 S.C. 454, 401 S.E.2d 195 (S.C. Ct. App. 1991). *Duke Power* involved an action by a utility company to recover damages for destruction of utility pole. The Court of Appeals affirmed the circuit court's judgment for the entire replacement cost of the pole, stating:

---

[1] It is important to note that Norfolk Southern admits that Meyer's repair and replacement estimates *themselves* are relevant and admissible evidence. "If Avondale could show that there is no market for certain of its equipment…evidence of repair and/or replacement cost may be considered…" Motion at 6. However, Norfolk Southern argues that evidence supporting repair and replacement cost *as the appropriate measure of damage* is irrelevant and inadmissible.

6

> The dispositive inquiry is whether the replacement of the pole in question made the utility company whole or whether it conferred a future benefit on the utility. As a general rule, the measure of damages for injury to personal property is the difference between the market value of the property immediately before and its value immediately after the injury. *If, however, a market does not exist for the property, the rule cannot be applied. In such cases, the courts use the cost of repairs or replacement value of the property.*

303 S.C. at 457, 401 S.E.2d at 196 (emphasis added) (citations omitted).

*Duke Power* is consistent with cases in other jurisdictions which similarly recognize that when there is no market for the property, repair or replacement costs are the appropriate measure of damages. In *Shaw Tank Cleaning Co. v. Texas Pipeline Co.*, 442 S.E.2d 851 (Tex. Civ. App. 1969), for example, the appeals court held that, in an action arising out of the destruction of the plaintiff's crude oil storage tank in a fire, the trial court properly instructed the jury to consider the cost of restoring the tank, less any betterment that might result from the replacement. The court of appeals stated:

> The appellee pleaded and proved the tank had no market value in that it was permanently attached to appellee's realty and the specialized use of the tank was an integral part of appellee's pipeline system. . . . Ordinarily the measure of damages of property destruction is the market value of the property destroyed, however, where there is no market value *the proper measure of damages is the cost of replacement of the article*.

*Id.* at 854 (emphasis added); *see also Beaufort & Morehead R. Co. v. Damyank*, 122 F. Supp. 82, 84 (E.D.N.C. 1954) (in action for damage to bridge having no market value, court held "we must resort to the cost of repairs or replacement rule"); *Pillsbury Co. v. Midland Enters., Inc.*, 715 F. Supp 738, 764 (E.D. La. 1989) ("Where the owner has used the property for a special use or where there otherwise may be no true market, replacement costs may be the most accurate basis for determining damages, which are recoverable whether or not the property is replaced"); *Krueger v. Steffen*, 30 Wis.2d 445, 450, 141 N.W.2d 200, 202 (1966) ("Where the chattel damaged has no ascertainable market value, the cost of repairs is the measure of damages");

*Hartford Elec. Light Co. v. Beard*, 3 Conn. Cir. Ct. 323, 323-24, 213 A.2d 536, 537 (1965) ("The measure of damages to property without market value is the reasonable cost of repairs necessary to restore it to its former condition"); *Ohio Power Co. v. Johnston*, 18 Ohio Misc. 55, 57, 247 N.E.2d 338, 340 (1968) ("[cost of repairs] is recognized in Ohio as the more accurate method of measuring damages where the property damaged is not an item generally bought and sold on the open market and where the concept of 'market value' is virtually impossible to apply"); *Cutler-Hammer, Inc. v.* Troy, 283 A.D. 123, 126, 126 N.Y.S.2d 452, 455 (N.Y. Ct. App. 1953) ("There was no market for the dies and molds. Under such circumstances value may be proven by substitute methods. These include replacement value"); *King Fisher Marine Serv.*, 724 F.2d at 1187 (affirming award of costs of replacing lost barge); *see also* W.E. Shipley, Measure of damages for conversion or loss of, or damage to, personal property having no market value, 12 A.L.R.2d 902 § 1[a] ("Where the property is such that reproduction or replacement is possible, it has been said that reproduction cost *is the measure of damages*") (emphasis added).

Because the Court already has determined that the cost of repair and replacement is an appropriate measure of the value of Avondale's property if the jury concludes there is no market for the property, Norfolk Southern's argument that Avondale should not be able to advance this theory at trial is wholly without merit.

**IV.     The Specific Portions of Meyer's Testimony and Opinions Challenged by Norfolk Southern Should Not be Excluded.**

As it did in its Motion to Exclude the Expert Testimony of Harold V. Meyer, Norfolk Southern again takes issue with certain of Mr. Meyer's specific conclusions. Namely, Norfolk Southern seeks to exclude 1) testimony regarding the cessation of operations at Avondale, 2) opinions regarding equipment efficiencies, 3) reliance on the "Loss Summary" and 4) conclusions formed on the basis of Meyer's extrapolation methodology.

After a hearing on these same issues, in which the Court *specifically considered* the reasonableness of Mr. Meyer's extrapolation methodology and the reliability of the Loss Summary (Sept. 7, 2007 Hr'g. Tr. at 240), the Court qualified Mr. Meyer as an expert in this case. The Court held that Mr. Meyer's testimony was "based upon sufficient facts or data to be the product of reliable principles and methods and that he [had] applied the principles and methods reliably to the facts of this case." *Id.* As such, under the guise of a motion in limine, Norfolk Southern is asking the Court to reconsider its denial of its Motion to Exclude the Expert Testimony of Harold V. Meyer. Because Norfolk Southern has failed to even suggest that there has been a change in controlling law or that the Court made a clear error of law, Norfolk Southern's motion for reconsideration should be denied. *See Ellison*, 2006 WL 3192543, at *1.

Should the Court nevertheless consider the merits of Norfolk Southern's arguments, the arguments would again fail. The Fourth Circuit has made abundantly clear that these sort of attacks on an expert's actual conclusions go to the weight, not admissibility, of the testimony. *TFWS, Inc.*, 325 F.3d at 240; *see also Consolidated Ins. Benefits, Inc. v. Conseco Medical Ins. Co.*, Slip Opinion, No. 6:03-cv-03211- RBH, 2006 WL 3423891, at *17 (D.S.C. Nov. 27, 2006) (defendant's challenge of credibility and accuracy of underlying facts and data upon which expert relied went to weight of evidence not admissibility). "The fallibility of an expert's assumptions go to the evidence's weight, not its admissibility." *Wilder Enterprises, Inc. v. Allied Artist Pictures Corp.*, 632 F.2d 1135, 1144 (4th Cir. 1980). It is up to the opposing party to examine the factual basis for the opinion on cross-examination, as "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Consolidated*, at *17 (quoting *Daubert*, 509 U.S. at 596). Indeed, the Court "need not determine that the expert

9

testimony a litigant seeks to offer into evidence is irrefutable or certainly correct. As with all other admissible evidence, expert testimony is subject to being tested by vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 260 (4th Cir. 1999) (citations omitted). Defendants' attacks on Meyers actual conclusions therefore go to the weight, not admissibility, of his conclusions, and his testimony should not be excluded.

### V.     Avondale Should not be Required to Elect Which Measure of Damages it Intends to Pursue at Trial.

In addition to challenging the testimony of Mr. Meyer, Norfolk Southern also argues that Avondale should be required now to elect which measure of damages it intends to pursue at trial. Motion at 9. However, as Norfolk Southern acknowledges, it is well-established law in South Carolina that "when facts entitle a party to alternate remedies…[a plaintiff] may plead and prove his entitlement to both…." *Harper v. Ethridge*, 290 S.C. 112, 120 (S.C. App. 1986). Notwithstanding this well-established principle, Defendants seek to force Plaintiffs to choose a damage theory, arguing that multiple damage theories ostensibly present a burden of defending different claims involving substantially different proof and a potential for jury confusion. Motion at 9.

Norfolk Southern suggests no persuasive reason why it would be prejudiced or unfairly burdened if multiple damages theories are presented,[2] nor does it suggest why the jury would be confused in electing which measure of damages to award. Alternative damages theories are often presented in trials, *see Harper*, 290 S.C. at 121, and it is the job of the attorneys to make their case clear to the jury. In short, Norfolk Southern cannot ignore well-established South

---

[2] While presenting two theories of damages will result in a slightly longer trial, Norfolk Southern's contention that the different damages theories involve substantially different proof is unsupported. The facts surrounding the derailment, the elements of causation, and the proof regarding how and why Avondale was damaged will be the same regardless of which damages theories are presented.

10

Carolina law allowing a plaintiff to plead alternate damages theories and demand that Plaintiffs select which theory they will present simply because it will be easier for Defendants' attorneys. This Court should deny Norfolk Southern's request that Plaintiffs elect a damages theory before trial.

## CONCLUSION

For each of the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendant Norfolk Southern's Motion *In Limine* to Exclude Evidence Related to Avondale's Alternative Theory of Damages, Including Certain Witness Testimony and Opinions of Avondale Mills' Expert Witness, Harold V. Meyer.

Respectfully submitted, this 4th day of January, 2007.

        RICHARDSON, PATRICK,
        WESTBROOK & BRICKMAN, LLC

        /s/ J. David Butler
        Terry E. Richardson, Jr. (#3457)
        J. David Butler (#6206)
        Walter McBrayer Wood (#9649)
        1730 Jackson Street
        Barnwell, South Carolina  29812
        (803) 541-7850 (telephone)
        (803) 541-9625 (facsimile)

        Michael C. Russ (*pro hac vice*)
        Ben F. Easterlin, IV (*pro hac vice*)
        Catherine M. O'Neil (*pro hac vice*)
        Stephen P. Cummings (*pro hac vice*)
        KING & SPALDING LLP
        1180 Peachtree Street, N.E.
        Atlanta, Georgia  30309-3521
        (404) 572-4774 (telephone)
        (404) 572-5140 (facsimile)

        **Counsel for Plaintiff Avondale Mills, Inc.**

        James W. Logan, Jr. (#2712)
        Michael T. Smith (#4781)
        LOGAN, JOLLY & SMITH LLP
        1805 North Boulevard
        Anderson, South Carolina  29621
        (864) 226-1910 (telephone)
        (864) 226-1931 (facsimile)

        Robert Fisher (*pro hac vice*)
        Richard L. Sizemore (*pro hac vice*)
        ROBINS, KAPLAN, MILLER & CIRESI LLP
        2600 One Atlanta Plaza
        950 East Paces Ferry Road
        Atlanta, Georgia  30326
        (404) 760-4300 (telephone)
        (404) 233-1267 (facsimile)

        **Counsel for Plaintiff Factory Mutual Insurance Company**