**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION**

| | | |
|---|---|---|
| Avondale Mills, Inc. and Factory Mutual Insurance Company, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil Action No. 1:05-CV-2817-MBS |
| v. | ) | |
| | ) | [Norfolk Southern *in limine* No. 15] |
| Norfolk Southern Corporation and Norfolk Southern Railway Company, | ) | |
| | ) | |
| Defendants. | ) | |

**REPLY TO PLAINTIFFS' RESPONSE TO NORFOLK SOUTHERN'S
MOTION *IN LIMINE* [DE # 975] TO EXCLUDE EVIDENCE RELATING
TO AVONDALE'S ALTERNATIVE THEORY OF DAMAGES,
INCLUDING CERTAIN TESTIMONY AND OPINIONS OF
AVONDALE MILLS' EXPERT WITNESS, HAROLD V. MEYER**

On December 7, 2007, Defendants Norfolk Southern Railway Company and Norfolk Southern Corporation (hereinafter "Norfolk Southern") filed a motion *in limine* to exclude evidence relating to Avondale's alternative theory of damages, including certain testimony and opinions of Avondale Mills' expert witness, Harold V. Meyer ("Defendants' Motion") [DE #975]. In its Motion, Norfolk Southern argued that the evidence should be excluded because Avondale's alternative theory of damages is inconsistent with South Carolina law and, as such, is irrelevant, unfairly prejudicial and likely to mislead and confuse the jury. *See* Defendants' Motion 4-9.

Norfolk Southern also argued that such evidence should be excluded because Avondale has elected not to pursue the alternative theory and its exclusion best serves the interest of judicial economy. *Id.* at 9-11. Finally, Norfolk Southern argued that Meyer's specific testimony

and opinions regarding the cessation of operations at Avondale Mills, efficiency of the machinery, the Loss Summary report and conclusions based on the replacement cost extrapolation method should be excluded because they are unreliable and lack sufficient factual and/or scientific bases pursuant to Federal Rules of Evidence 602, 701, 702 and 703 and/or were not identified in Meyer's March 23, 2007 Rebuttal Report as required under Federal Rule of Civil Procedure 26. *Id.* at 11-16.

On January 4, 2008, Plaintiffs filed a response in opposition to Defendants' Motion, ("Plaintiffs' Response") [DE #1069], in which they argue that Norfolk Southern's Motion should be denied as an untimely and improper motion for reconsideration under Federal Rule of Civil Procedure 59. *See* Plaintiffs' Response 3-4. In addition, Plaintiffs argue that Mr. Meyer does not state an improper legal conclusion regarding the appropriate measure of damages, *id.* at 4-6, and that repair and replacement cost is the best measure of the actual value of Avondale's property because there is no market for the property. *Id.* at 6-8. Plaintiffs also argue that Norfolk Southern's attacks on Meyer's specific opinions and testimony go to the weight, not the admissibility of the evidence. *Id.* at 9-10. Finally, Plaintiffs contend that they should be permitted to plead and prove their entitlement to alternative remedies and should not be required to elect which measure of damages they intend to pursue at trial. *Id.* at 10-11.

Defendants now submit this Reply Memorandum to Plaintiff's Response. In responding to the issues raised in Plaintiff's Response, Defendants incorporate herein the arguments set forth in their Motion.

## ARGUMENT

**I.    Norfolk Southern's Motion *in Limine*, Even if Couched as a Motion for Reconsideration, is Timely and Proper**

Plaintiffs contend that Norfolk Southern's Motion is an untimely motion for reconsideration of Norfolk Southern's previous motions – specifically, its *Daubert* motion to exclude Mr. Meyer and its motion for partial summary judgment as to Plaintiffs' repair and replacement cost theory – under Fed. R. Civ. P. 59. It is not. This is a motion to exclude or limit the presentation of evidence in this case pursuant to Rules 403, 602, 701, 702 and 703 of the Federal Rules of Evidence, as well as Rule 26 of the Federal Rules of Civil Procedure. As such, the Plaintiffs' arguments are without merit.

Additionally, to the extent that Norfolk Southern's Motion *in Limine* requires the Court to reconsider its prior rulings with respect to Norfolk Southern's Motion for Partial Summary Judgment as to Plaintiff's Claim for Repair and/or Replacement Cost [DE #584] and Norfolk Southern's Motion to Exclude Expert Testimony of Harold V. Meyer [DE #578], Norfolk Southern's Motion *in Limine* is timely. Those rulings involved the denial of Norfolk Southern's motions and are interlocutory by definition.

The Fourth Circuit Court of Appeals has held, unequivocally, that a district court retains the power to modify its interlocutory orders, including orders on motions for partial summary judgment, *any time* prior to entry of final judgment. *American Canoe Ass'n v. Murphy Farms, Inc.*, 326 F. 3d 505, 514-515 (4th Cir. 2003); *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F. 2d 1462, 1469-1470 (4th Cir. 1991). Consequently, the ten day deadline contained in Rule 59(e) is not applicable to the reconsideration of these rulings. *Fayetteville Investors*, 936 F. 2d at 1469 (confirming the district court's recognition that the Rule 59 (e) time requirements are only applicable to final judgments).

Finally, as discussed fully on pages 4-9 of Defendants' Motion, Norfolk Southern contends that this court's interlocutory orders which would allow Plaintiffs to present evidence concerning Avondale's alternative repair and replacement cost theory of damages are erroneous under South Carolina law. Thus, assuming *arguendo*, that the grounds necessary to amend a final judgment under Rule 59 (e) are applicable here, which Norfolk Southern denies, Norfolk Southern has established such grounds.

**II.    Meyer's Statements Regarding the Appropriate Measure of Damage that Should be Applied in this Case are Unfounded Legal Conclusions, which are Inconsistent with South Carolina Law and Should be Excluded to Prevent Jury Confusion**

In his report, Meyer unequivocally opines that "[r]eplacement cost is the appropriate valuation methodology for measuring the damage to Avondale's machinery, equipment and property caused by the chlorine contamination." *See* Harold V. Meyer Expert Rebuttal Rpt. 2, 12, March 23, 2007 [DE # 370-371]. In their Response to Defendants' Memorandum, Plaintiffs suggest that this conclusion by Meyer is not a legal conclusion. Rather, they claim, "Meyer's expert report and testimony merely provide what he believes, *factually*, to be the appropriate amount of money required to return Avondale's equipment to its pre-derailment condition." Plaintiffs' Response 4. This interpretation of Meyer's report by Avondale's attorneys is entirely inconsistent with Meyer's own statements. Meyer does not state that he has calculated the amount of money required to return Avondale's equipment to its pre-derailment condition. What he *does say* is that "[r]eplacement cost is the appropriate valuation methodology *for measuring the damage* to Avondale's….property." Meyer Rebuttal Rpt. at 2, 12 (emphasis added). This is absolutely a *legal conclusion* as to the appropriate measure of damages in this case. As such, it is improper and should be excluded.

Assuming, *arguendo*, that the Court accepts this statement as a *factual* opinion, regardless of how it is characterized, it should be excluded because it is entirely contrary to South Carolina law. *See* Defendants' Motion 5-6. Meyer provides no assessment of the actual value of the machinery, equipment and property prior to the derailment, and he imposes no limitation on his replacement cost estimate to account for any improvement to the value of Avondale's property and/or business as a result of the proposed wholesale replacement of decades old equipment and machinery with *brand new* equipment and machinery.[1] This failure to impose such limitations is inconsistent with South Carolina law and the presentation of Meyer's replacement cost estimate, couched as the appropriate measure of damages in this case, poses a high risk of jury confusion. For that reason, Meyer's opinion that replacement cost is "the appropriate valuation methodology for measuring the damage to Avondale's equipment, machinery and property" should be excluded.

### III.     The Court has not Ruled that Repair and Replacement Cost is the Appropriate Measure of Damages in this Case and, Indeed, a Ruling as Such Would be Contrary to South Carolina Law

In their Response, Plaintiffs state that "[t]he Court has already determined that, when there is no market for damaged property, repair and replacement cost is appropriate to demonstrate the value of the damaged property." Plaintiffs' Response 6, *citing* Hr'g Tr., Sept.

---

[1] Recognizing the potential problems with the calculations set forth in his "Rebuttal" Report, Meyer has recently filed an impermissible and untimely "Corrected Report," which Norfolk Southern has moved to strike. *See* Norfolk Southern's Motion to Strike "Corrected" Meyer Report and Memorandum in support thereof [DE #1081]. In his "Corrected Report," Meyer purports to take into account betterment and depreciation, but the replacement cost valuation set forth in his original Rebuttal Report, as it stood at the time of Norfolk Southern's Motion, did not account for these factors. Although the Corrected Report was served on December 28, 2007, prior to Avondale's Response to Norfolk Southern's Motion, which was filed on January 4, 2008, the Response curiously does not mention the Corrected Report at all. Norfolk Southern contends that Meyer's Corrected Report constitutes an admission that his original report was wrong.

17, 2007 [DE # 795].[2]   The implication in Plaintiffs' Response is that this Court has held that repair and replacement cost *alone* constitute the actual value prior to the derailment.   However, this implication is a blatant mischaracterization of the Court's ruling.   The Court held as follows:

> If there is a market for the property the correct measure of damages is the difference between the market value of the property immediately before the injury and its market value immediately after the injury.   If there is no market value, the question would become whether the property could be restored, or if it had to be replaced.   *Restoration and replacement value are but two factors the jury would need to consider.   The jury will also need to consider whether the cost of restoration or replacement, if that measure is utilized, should be reduced for any betterment accruing to Avondale.*

Hr'g Tr. 222-223, Sept. 17, 2007 (emphasis added).   The Court clearly ruled that repair and replacement cost, *if considered*, are but two *factors* among others, including betterment, that should be considered in determining the value of property with no market value.[3]   As such, Plaintiffs' reliance upon the Court's order to support their contention is misplaced.

Similarly, the majority of cases cited by Plaintiffs in their Response instruct that repair and/or replacement cost should be considered only as a factor among many, including betterment, depreciation and obsolescence, when determining the actual value of property for which there is no market, consistent with the Court's September 17, 2007 ruling.[4]   Indeed, the

---

[2] Although Plaintiffs failed to reference a specific page of the Hearing Transcript, Norfolk Southern assumes this interpretation of the Court's ruling is taken, albeit loosely, from pages 222-223 of the Sept. 17, 2007 Transcript.

[3] One of the reasons Avondale contends that there is no market for its property is that the property is "unique." For the reasons set forth in Norfolk Southern's Motion at page 7, as well as Norfolk Southern's Memorandum and Reply in support of its Motion for Partial Summary Judgment as to Plaintiffs' Claim for Repair and/or Replacement Cost, Norfolk Southern disagrees. *See also*, John H. Geiser Dep. 16, Dec. 14, 2007 (testifying that there is a market for used textile equipment); *id.* at 82-83 (testifying that Avondale had no "special machinery or equipment that's not available in the…open market"); and *id.* at 84 (testifying that he did not recall any "specially manufactured" equipment at Avondale).

[4] As mentioned, Meyer's original report did not take into account betterment or depreciation. This is directly contrary to the cases Plaintiffs cite at pages 7-8 of their Response. *See Shaw Tank Cleaning Co. v. Texas Pipeline Co.*, 442 S.W.2d 851, 855 (Tex. App. 1969) (where

only cases Plaintiffs cite which expressly allow replacement cost with no reduction for betterment are those involving damaged or destroyed utility poles. *See Duke Power Co. v. Thornton*, 303 S.C. 454, 401 S.E.2d 195 (Ct. App. 1991), *Hartford Elec. Light Co. v. Beard*, 213 A.2d 536 (Conn. Cir. Ct. 1965) and *Ohio Power Co. v. Johnston*, 247 N.E.2d 338 (Ohio Com. Pl. 1968). This line of cases is inapplicable to the facts of this case because in each of these, the court reasoned that the utility pole(s) had no discernable life expectancy and, therefore, the replacement of the pole(s) did not necessarily confer a benefit on the property owner. In contrast, in this case, replacement of Avondale's decades old equipment and machinery, which is at the end or beyond its life expectancy, would unquestionably confer a benefit on the company and enhance the value of its business and property. For that reason, these cases are distinguishable and not applicable to Avondale's claim.

In addition to mischaracterizing the Court's September 17, 2007 ruling, Plaintiffs have also mischaracterized the arguments set forth in Defendants' Motion. Plaintiffs suggest that "Norfolk Southern admits that Meyer's repair and replacement estimates *themselves* are relevant and admissible evidence." Plaintiffs' Response at 6 n. 1. In doing so, they cite to Norfolk Southern's statement that "[i]f Avondale could show that there is no market for certain of its

---

property was shown to have no market value, jury instruction to consider "cost of restoration '*reduced by any betterment* which might result from the replacement of the existing tank with a new tank'…properly included elements of depreciation, obsolescence, if any, and anticipated serviceability of the tank which was destroyed") (emphasis added); *Beaufort & Morehead R. Co. v. Damyank*, 122 F. Supp. 82, 85 (E.D.N.C. 1954) (where bridge was damaged by one accident and then, before repairs could be made, was destroyed by another, measure of damage was cost of replacement *reduced by* the cost of repairing the original damage) (emphasis added); *Pillsbury Co. v. Midland Enters. Inc.*, 715 F. Supp. 738, 764 (E.D. La. 1989) ("[w]here repair or replacement costs form the basis of the damage award, *the Court must determine whether the repair or replacement adds new value to or extends the useful life of the property; if so, an appropriate reduction from the full repair or replacement costs should be made.*") (emphasis added); and *Krueger v. Steffen*, 141 N.W.2d 200, 202 (Wis. 1966) (cost of repair may be shown as bearing upon the diminution in value and estimates of repair costs are properly considered *together with other evidence* of diminished value).

equipment…evidence of repair and/or replacement cost may be considered…" *Id.*, *citing* Defendants' Motion at 6. This statement is taken entirely out of context and it has been inappropriately edited to suit Avondale's purpose. Norfolk Southern argued – and continues to argue – that *credible* evidence of repair and/or replacement cost may be admissible under certain *limited* circumstances. Norfolk Southern maintains that those circumstances are not present in this case and, therefore, diminution in value should be applied as the measure of damages in this case. Moreover, Norfolk Southern continues to argue, for the reasons set forth in its Motion to Exclude Expert Testimony of Harold V. Meyer [DE #578] as well as the reasons set forth in Defendants' Motion at pages 11-16,[5] that Meyer's testimony and opinions regarding the repair and/or replacement cost are unreliable, do not constitute *credible* evidence of value and/or are inadmissible and, therefore, should be excluded.

Finally, Plaintiffs state that "Defendants contend that repair and replacement should only be used as a factor in assessing the upper limit of Avondale's damages." Plaintiffs' Response 6, *citing* Defendants' Motion at 6. This statement also mischaracterizes Norfolk Southern's argument, which is that the difference in pre- and post-derailment value of Avondale's property is the "upper limit" of Avondale's damages and that repair and/or replacement costs are only allowed as evidence of damages where such "costs are reasonable, i.e., not in excess of the value of the property immediately prior to becoming injured." *See* Defendants' Motion at 6 and Defendants' Motion for Partial Summary Judgment as to Plaintiffs' Repair and/or Replacement Cost [DE #584].

---

[5] In response to Norfolk Southern's arguments regarding the specific opinions rendered by Mr. Meyer, Plaintiffs merely reiterate their argument that Norfolk Southern's motion to exclude Meyer has already been considered and ruled upon. In reply, Norfolk Southern reiterates the argument set forth in section I above regarding the timeliness of its motion *in limine*. In addition, Plaintiffs failed to address Meyer's failure to disclose the basis for his replacement cost extrapolation method and efficiency opinions in his expert report as required by Fed. R. Civ. P. 26, a point which was not raised or known at the time of Norfolk Southern's previous motions.

**IV.**    **Avondale Should be Required to Elect Which Measure of Damages it Intends to Pursue at Trial**

Norfolk Southern recognizes that, as a general rule, a party may be permitted to plead and prove entitlement to alternative remedies at trial. *See Harper v. Ethridge*, 290 S.C. 112, 121, 348 S.E.2d 374, 379 (Ct. App. 1986). However, as the court in *Harper v. Ethridge* clearly states, "the demands of fairness and orderly adjudication" may require a party to elect a remedy prior to trial. 290 S.C. at 122, 348 S.E.2d at 380. Plaintiffs ignore these considerations and instead seek to present to the jury two widely disparate theories of damages. Given the facts and posture of this case, they should not be allowed to do so.

Taken on its face, Avondale's alternative theory of damages is confusing. Avondale initially articulated its damages as including the loss or diminution in value of its business caused by the derailment. *See* Avondale's Revised and Restated Initial Disclosures and Local Rule 26.03 Disclosures 35-36, September 8, 2006 [DE # 290]. According to Avondale, the calculation of diminution in business value comprises the "value of Avondale's business as a going concern immediately before the derailment and chlorine release." *See id.* at 35. Thus, by definition, Avondale's alternative theory of damages based on the repair or replacement cost of its property – assets of a business and, thus, a part of its going concern – is subsumed by this measure of damages. Consequently, a juror may view Avondale's multiple damages theories as consisting of distinct elements where, in fact, elements of the theories overlap.

In addition to this obvious potential for confusion, the Plaintiffs' theory is totally inconsistent with South Carolina law, thus giving rise to the distinct possibility of more confusion. Given this potential and the fact that Avondale has already elected not to pursue its

alternative theory[6] – a fact which Avondale entirely ignores – the presentation of yet another theory of damages will do little to promote "orderly adjudication."

Further, contrary to Avondale's assertion that presentation of its alternative theories of damages "will result in a slightly longer trial," *see* Plaintiffs' Response 10 n. 2, claims of repair and replacement costs of 370 million dollars of very diverse equipment spread across three plants would be extremely time consuming to prove and defend. Given this fact and the necessity of defending Avondale's disparate theories of damages in the limited amount of trial time allotted by the Court, judicial economy will undoubtedly suffer and unfair prejudice to Norfolk Southern will occur. Therefore, adhering to the principles of "fairness and orderly adjudication," Avondale should be not entitled to present alternative theories of damages at trial.

## CONCLUSION

For the foregoing reasons, Defendants Norfolk Southern Corporation and Norfolk Southern Railway respectfully request that this Court grant its motion *in limine* to exclude evidence regarding Avondale's repair and replacement cost theory of damages, including the testimony and opinions of Avondale Mills, Inc.'s expert witness, Harold V. Meyer.

(SIGNATURE ON FOLLOWING PAGE)

---

[6] Interestingly, Avondale lists Meyer as a "may call" witness, giving further credence to Norfolk Southern's argument that Meyer's measure of damages is an alternative theory only and one that should not be presented.

January 10, 2008                    Respectfully submitted,


                                   s/Phillip E. Reeves
                                   W. Howard Boyd, Jr. (Fed. I.D. #1431)
                                   Ronald G. Tate, Jr. (Fed. I.D. #4021)
                                   Phillip E. Reeves (Fed I.D. #3232)
                                   Jennifer E. Johnsen (Fed. I.D. #5427)
                                   Ronald K. Wray, II (Fed. I.D. #5763)
                                   GALLIVAN, WHITE & BOYD, P.A.
                                   55 Beattie Place, Suite 1200
                                   P.O. Box 10589
                                   Greenville, SC  29603
                                   (864) 271-9580 (tel.)
                                   (864) 271-7502 (fax)
                                   hboyd@gwblawfirm.com
                                   rtate@gwblawfirm.com
                                   preeves@gwblawfirm.com
                                   jjohnsen@gwblawfirm.com
                                   rwray@gwblawfirm.com


                                   Joe G. Hollingsworth (*pro hac vice*)
                                   Katharine R. Latimer (*pro hac vice*)
                                   Frank Leone, Jr. (*pro hac vice*)
                                   Bruce J. Berger (*pro hac vice*)
                                   Peter J. Skalaban, Jr. (*pro hac vice*)
                                   SPRIGGS & HOLLINGSWORTH
                                   1350 I Street, N.W.
                                   Washington, DC  20005
                                   (202) 898-5800 (tel.)
                                   (202) 682-1639 (fax)


                                   Crawford S. McGivaren, Jr. (*pro hac vice*)
                                   CABANISS, JOHNSTON, GARDNER, DUMAS
                                   & O'NEAL, LLP
                                   P.O. Box 830612
                                   Birmingham, AL  35283-0612
                                   (205) 716-5312 (tel.)
                                   (205) 716-5389 (fax)

John C. Duffey (*pro hac vice*)
STUART & BRANIGIN, LLP
300 Main Street, Suite 900
P.O. Box 1010
Lafayette, IN  47902
(765) 423-1561 (tel.)
(765) 742-8175 (fax)

ATTORNEYS FOR DEFENDANTS NORFOLK
SOUTHERN CORP. AND NORFOLK
SOUTHERN RAILWAY COMPANY