IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | |
|---|---|
| Avondale Mills, Inc. and Factory Mutual Insurance Company,<br><br>    Plaintiffs,<br><br>    v.<br><br>Norfolk Southern Corporation and Norfolk Southern Railway Company,<br><br>    Defendants. | Civil Action No. 1:05-CV-2817-MBS |

### NORFOLK SOUTHERN'S MOTION FOR LEAVE TO FILE SUPPLEMENTAL SURREBUTTAL REPORTS OF DR. DAVID T. ROBINSON, DR. DAVID B. LASATER, AND CRAIG T. ELSON

Defendants, Norfolk Southern Corporation and Norfolk Southern Railway Company (collectively "Norfolk Southern") respectfully move pursuant to Federal Rule of Civil Procedure 16(b)(4) to file Supplemental Surrebuttal Reports of Dr. David T. Robinson (Att. 1), Dr. David B. Lasater (Att. 2), and Mr. Craig T. Elson (Att. 3). Various portions of their reports are necessary for three independent reasons.

First, portions of their reports relate solely to changes and "corrections" in the December 7, 2007 "Corrected Rebuttal Report" of Plaintiffs' expert Robert Taylor [DE # 986-3]. Taylor could not be deposed concerning these changes and "corrections" until January 11, 2008, following which deposition the transcripts were immediately sent to Drs. Robinson and Lasater and Mr. Elson for their critical review.

518508v6

Second, portions of their reports relate solely to issues surrounding Avondale's "final liquidation value," as to which discovery has continued by order of the Court. In particular, Avondale's CFO Jack Altherr provided a deposition on December 14, 2007 and its CEO Stephen Felker, Sr. just provided his deposition this week, on January 28, 2008. Additional liquidation issues stem from Taylor's "Corrected Rebuttal Report" and were addressed at his January 11, 2008 deposition, which Norfolk Southern's experts have reviewed.

Third, Drs. Robinson and Lasater have provided alternative valuations for Avondale, because of the possibility that the Court would order Norfolk Southern to present its valuation opinions based upon May 26, 2006 as opposed to January 5, 2005. Although Mr. Elson has not prepared an alternative valuation, he has, based upon the same possibility, opined that any value for Avondale as of May 26, 2006 would be lower than the value that Mr. Elson previously calculated for January 5, 2005. As to the possible necessity for submission of such alternative valuation opinions, Norfolk Southern incorporates herein its Opposition to Plaintiffs' Submission Regarding Alternative Damages Opinions and Valuation Date, filed concurrently.

Pursuant to Local Civil Rule 7.04 DSC, Plaintiffs have consented to the filing of these supplemental surrebuttal reports, with Norfolk Southern's agreement that they will not be used to delay trial. Norfolk Southern is in the process of scheduling the depositions of Drs. Robinson and Lasater and Mr. Elson for examination on all issues addressed in their Supplemental Surrebuttal Reports.[1]

---

[1] Pursuant to Local Civil Rule 7.04 DSC, this motion is filed without a supporting memorandum as it contains a full explanation of the grounds for the motion.

**FACTUAL BACKGROUND**

**I.      Taylor's "Corrected" Report.**

On December 3, 2007 Avondale informed Norfolk Southern that Taylor would serve a "Corrected Rebuttal Report" around December 7, 2007. B. Easterlin e-mail to B. Berger, Dec. 3, 2007 (Att. 4). Norfolk Southern expressly reserved its right to object to Taylor's tardy submission of such a report. B. Berger e-mail to B. Easterlin, Dec. 3, 2007 (Att. 5). Among other things, Taylor could not even be deposed about his "corrected" report until January 11, 2008, although the deadline for the parties' Rule 26(a)(3) disclosures was January 7, 2008. By virtue of the operation of Rule 26(e)(2), January 7, 2008 also constituted the deadline for Norfolk Southern to serve supplemental expert reports in response to Taylor's report. *See* Fed. R. Civ. P. 26(e)(2) ("Any additions or changes to [an expert report] must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due.").

Recognizing the unfairness of Taylor presenting a "corrected" report about which he could not be deposed until after the deadline for Norfolk Southern to file responsive submissions, Avondale agreed to "waive or extend *any* corollary deadlines relating to *any* follow up necessitated by [Taylor's] deposition." B. Easterlin e-mail to B. Berger, Dec. 10, 2007 (emphasis added) (Att.6). On that basis, Norfolk Southern proceeded to take Taylor's deposition on January 11, 2008, and immediately thereafter transmitted the rough deposition transcript to its financial experts.[2]

---

[2] As Norfolk Southern informed the Court on January 17, 2008, its financial experts were then (and are still) extremely busy with a variety of their professional obligations scheduled before Avondale submitted the Taylor "Corrected Rebuttal Report." Hr'g Tr. 73:8-16, Jan. 17, 2008 (Rough) (Att. 7).

3

As the Court heard at the January 17 hearing, Taylor's "Corrected Rebuttal Report" made changes of scores of millions of dollars as compared to his March 2007 report. Hr'g Tr. 79:17-82:3, Jan. 17, 2008. In particular, Taylor changed his methodology for counting the May 2006 $100 million payment to Avondale by FM, eliminating this payment entirely from the "Net Proceeds of Liquidation" although he had previously allowed $86 million in his March 2007 report. *Id.*; *see* Plaintiff's Response in Opposition to Norfolk Southern's Motion to Strike Alternative Damage Calculations in Corrected Taylor Report ("Motion to Strike") [DE # 997].

Taylor also corrected an error of $71 million that he had made by taking non-cash amounts from Avondale financial statements – which he did not understand, as now admitted by Avondale's counsel – and treating them as if they were cash losses. Hr'g Tr. 79:17-82:3, Jan. 17, 2008; *see* Motion to Strike. Avondale's CFO, Jack Altherr, who supervised Taylor's reports, admitted that he had made "no effort" to assure that Taylor "fully understood" Avondale's accounting prior to submission of Taylor's March 2007 report. Altherr Dep. 63:4-64:8, Dec. 14, 2007 (Att. 8).[3]

Taylor also changed his mind about the tax-affecting of certain alleged cash flows, an alteration that added more than $20 million to Avondale's alleged damages. Taylor Dep. 604:20-606:5, Jan. 11, 2008 [DE # 1213].

## II.    Avondale's "Final Liquidation Value."

On October 11, 2007, recognizing that Avondale's liquidation was ongoing, and with Plaintiffs' concurrence, the Court granted Norfolk Southern's motion to allow discovery to continue on issues relating to Avondale's final liquidation value. *See* Minute Entry granting

---

[3] Taylor also made innumerable other changes in his report, some of which were for the purpose, as admitted by Altherr, of making his earlier presentation more logical and easier to understand. Altherr Dep. 60:23-61:12, Dec. 14, 2007.

4

Norfolk Southern's Motion to Modify Trial-Ready Date and Allow Further Discovery Concerning Avondale's Final Liquidation Value [DE # 799]. Norfolk Southern then attempted to schedule the Altherr deposition, but could not do so as early as it desired because Avondale's FY 2007 financial statements, which make major changes in estimates that feed directly into Avondale's final liquidation value, had allegedly not been adequately reviewed by Avondale's outside accountants. B. Easterlin e-mail to B. Berger, Nov. 15, 2007 (Att. 9). Avondale also suggested that Altherr's deposition be put off until after submission of Taylor's "Corrected Rebuttal Report" and production of the underlying work papers. B. Easterlin e-mail to B. Berger, Nov. 20, 2007 (Att. 10).

Certain issues relating to Avondale's liquidation were addressed, but could not be fully explored, at Altherr's deposition. In part, he could not testify from first-hand knowledge about the negotiations between Avondale and the purchasers of various parcels of property. As a result, on January 9, 2008, Norfolk Southern issued Notices of Deposition for Mr. Felker, Sr., and for Mr. Wyatt for the week of January 28. Felker, Sr. Notice of Deposition, Jan. 9, 2008 (Att. 11); GAC Holdings, LLC and GAC, LLC Notice of Deposition, Jan. 9, 2008 (Att. 12). On January 10, 2008, Norfolk Southern further explained to Avondale the precise reasons why it would be necessary to depose Mr. Felker, Sr. B. Berger Ltr. to M. Russ, Jan. 10, 2008 (Att. 13). Avondale agreed to the Felker deposition, which took place this week. Mr. Wyatt's deposition could not be scheduled until next week and will be held on Wednesday, February 6, 2008.

Immediately prior to the Altherr deposition, Avondale produced thousands of pages of additional documents relating to Taylor's "corrected" report and relating to liquidation issues.[4] It

---

[4] From November 5, 2007 until December 13, 2007, the day prior to Altherr's deposition, Avondale produced 5,932 pages of documents. Indeed, 3,054 pages were produced within one week of the deposition, with 605 pages produced the day before. Since that time, Avondale has produced 14,236 additional pages of documents.

5

became evident from review of the documents produced that Avondale was asserting an "accrual" of alleged environmental liabilities – to be deducted from Avondale's "Net Proceeds of Liquidation" and thus added to Avondale's alleged damages – in the amount of $12 million.[5] The basis for this estimate allegedly rested in "Phase 1 and Phase 2 environmental assessments." Altherr Dep. 163:3-167:8, Dec. 14, 2007. These documents had never been produced. After first suggesting that Norfolk Southern must somehow have received copies of these documents from Mr. Wyatt – a non-party to this litigation – Avondale finally produced the "Phase 1" assessments on January 23, 2008. B. Easterlin Ltr. to B. Berger, Jan. 23, 2008 (Att. 14). "Phase 2" assessments for some of Avondale's properties were not produced until January 24, 2008. B. Easterlin Ltr. to B. Berger, Jan. 24, 2008 (Att. 15). The first testimony in this case concerning these "Phase 1 and Phase 2 environmental assessments" occurred on January 28, 2008, when some of them were reviewed in Felker, Sr.'s deposition.[6]

The two main issues surrounding Avondale's liquidation that are in play at this time, in addition to the proper treatment of the $100 million FM payment, involve (a) whether Avondale and Taylor have properly deemed certain assets as "non-operating assets" such that the proceeds from their sale (now asserted to be $25.77 million) need not be credited as part of Avondale's liquidation proceeds and (b) whether Avondale's "accrual" of $12 million in purported future

---

[5] Avondale counsel told the Court on September 14, 2007 that there were "some liabilities for environmental cleanup that they are obligated to pay until the business is no longer under their custody and control." Hr'g Tr. 142:14-16, Sept. 14, 2007 [DE # 780]. At the time, the only environmental accrual that Avondale had provided notice of to Norfolk Southern was $3 million. Between September 14, 2007 and the production of Avondale's FY 2007 financial statements in December 2007, this environmental "accrual" grew by 400%, *i.e.*, increased by $9 million, to $12 million.

[6] Had these "Phase 1 and Phase 2 environmental assessments" been timely produced by Avondale, Norfolk Southern could have begun to obtain testimony about them at the December 14, 2007 Altherr deposition. Instead, the delay in production resulted in a six-week delay in obtaining deposition testimony.

environmental liabilities and $2 million in purported future other civil liabilities may properly be deducted from Avondale's liquidation proceeds or whether such amounts are speculative and not reasonably certain.  As to these issues, Avondale has been producing relevant documents to Norfolk Southern as late as Thursday, January 24, 2008, just a few days before Felker, Sr.'s deposition. *Id.*[7]  Relevant materials from these very recent productions were identified as soon as possible after they arrived and forwarded to Norfolk Southern's experts for review and analysis.

Additionally, other liquidation issues stemming from Taylor's December 7, 2007 "corrected" report could not be addressed until the January 28, 2008 deposition of Mr. Felker, Sr. These include issues relating to how Avondale has attempted to divide its assets into "Operating Assets" and "Non-Operating Assets" for the purposes of calculating "Net Proceeds of Liquidation."  Norfolk Southern obtained testimony on January 28, 2008 that shows, for example, that $7.8 million of the proceeds from the sale of Avondale's Graniteville facilities were from *operating assets*, although Taylor has treated them as *non-operating* so as to deprive Norfolk Southern of credit.[8]  Other testimony obtained on January 28, 2008 relates to the $12 million "accrual" for alleged environmental liabilities.  Felker, Sr. admitted that he was not aware of anyone at Avondale who submitted this estimate for review by an environmental engineer or other technical expert in the field, other than attorneys at King & Spalding.  Felker Sr. Dep. 110:25-111:7 Jan. 28, 2008.

---

[7] Avondale produced some additional documents on January 28, 2008, *i.e.*, two versions of a 2006 contract for the sale of Avondale's Graniteville facilities that Mr. Wyatt voided based upon purported environmental problems.

[8] For example, the assets improperly characterized as "non-operating" included the Gregg warehouse, the Granite Administration Building, three parking lots, and the land, ponds, streams, and canal that provided process water to the Gregg plant.  Felker, Sr. Dep. 5:2-8:2, 71:5-25, Jan. 28, 2008 (Rough) (Att. 16).

### III.     May 26, 2006 Valuation.

The Court has ruled that it will *not* decree that either Plaintiffs' May 26, 2006 valuation date or Norfolk Southern's January 5, 2005 valuation date is the only proper theory, nor that either of the two valuation dates is the only proper date, but that both sets of theories and dates are permissible and that the experts of both sides will be permitted to present their respective positions to the jury, with both sides free to argue the respective positions.  Hr'g Tr. 140:11-21, Jan. 17, 2008.  That is, if the Court is correct in ruling that May 26, 2006 is a *permissible* date for valuation, it is also correct in nonetheless allowing Norfolk Southern's experts in economics, business valuation, and accounting to present their contrary views.  Otherwise, the Court will have effectively granted a directed verdict to Plaintiffs and accepted their experts' theories as correct, something the Court has said that it would not do and which goes beyond the role of the Court.  As the Court announced at the *Daubert* hearing, the Court's "focus will be on the principles and methodology used or employed by the expert, and the Court will not be focused on any conclusions that have been reached by the expert."  Hr'g Tr. 4:10-13, Sept. 7, 2007 [DE # 742].[9]

Norfolk Southern does not believe that the Court should or would reverse its carefully considered ruling that Norfolk Southern's experts will be allowed to present their own theory as to valuation date and that Norfolk Southern will be allowed to argue these contra-valuations to the jury.  However, Norfolk Southern has taken the precautionary step of having additional valuation opinions added to the Supplemental Surrebuttal Reports of Drs. Robinson and Lasater and additional commentary from Mr. Elson concerning any May 26, 2006 valuation for Avondale.

---

[9] *See also* Hr'g Tr. 198:14-15, Sept. 7, 2007 (Avondale counsel arguing "the Daubert hearing is supposed to be about the reliability of the expert's methodology, not the conclusions").

8

**IV.     Plaintiffs Consent to the Supplemental Surrebuttal Reports of Drs. Robinson and Lasater and Mr. Elson.**

Plaintiffs have consented to the filing of supplemental surrebuttal reports from Drs. Robinson and Lasater and Mr. Elson, on the condition that these reports not be used to delay trial. *See* J. Wester e-mail sent on behalf of M. Russ to B. Berger, Feb. 1, 2008 ("Avondale will consent to the filing of the three rebuttal reports referenced below with the express reservation that the consent will not be used to delay the trial.") (Att. 17).  Norfolk Southern is presently scheduling depositions in connection with these supplemental reports and will produce the documents relied upon by Drs. Robinson and Lasater and Mr. Elson as soon as possible.

## ARGUMENT

**I.     Norfolk Southern Has Demonstrated Good Cause to Submit Supplemental Surrebuttal Reports.**

Although the deadline for submitting supplemental expert reports and Rule 26(a)(3) disclosures was January 7, 2008, the schedule may be modified "for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4).  As this Court explained in *Dilmar Oil Co. v. Federated Mut. Ins. Co.*, 986 F. Supp. 959, 980 (D.S.C. 1997):

> Rule 16(b) does not focus on the bad faith of the movant, or the prejudice to the opposing party.  Rather, it focuses on the diligence of the party seeking leave to modify the scheduling order to permit the proposed amendment.  Properly construed, "good cause" means that scheduling deadlines cannot be met despite a party's diligent efforts.  In other words, this court may modify the schedule on a showing of good cause if the deadline cannot be met despite the diligence of the party seeking the extension.

*Id.* (internal quotation and citation omitted).  In this case, it is clear that Norfolk Southern has endeavored to supplement its surrebuttal reports with the utmost speed and diligence, and any delay is solely the result of Avondale's dilatory conduct.

9

First, the deadline for pretrial disclosures, and hence the deadline for supplemental reports, was January 7, 2008.[10] However, Taylor could not be deposed about his "corrected" report until January 11, 2008. Plaintiffs therefore agreed to "waive or extend *any* corollary deadlines relating to *any* follow up necessitated by the deposition." B. Easterlin e-mail to B. Berger, Dec. 10, 2007 (emphasis added). Avondale's agreement to waive "any" deadline based on the January 7 deadline for submission of pretrial disclosures necessary applies to supplemental surrebuttal reports. Norfolk Southern's experts obviously could not have completed their supplemental reports prior to Taylor's deposition, which could not be scheduled until January 11, 2008 through no fault of Norfolk Southern. *See Beller v. United States*, 221 F.R.D. 689, 694 (D.N.M. 2003) (allowing plaintiff's expert to serve a post-discovery supplemental report would confer upon defendants the "right to take a new deposition of this expert. The new deposition testimony might well lead to [defendant's expert] having to modify its prior report").[11] Furthermore, Norfolk Southern forwarded Taylor's "corrected" report and January 11 rough deposition transcript to its financial experts immediately upon receipt of each, and Norfolk Southern's experts have worked expeditiously to supplement their surrebuttal reports since that time.

Second, Avondale's liquidation is still ongoing, and Avondale continues to produce responsive documents. It is not Norfolk Southern's fault that:

---

[10] Pursuant to Rule 26(e)(2), supplemental expert reports "must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due."

[11] *See also Robinson v. T.J. Maxx, Inc.*, 148 F.R.D. 490, 492 (N.D.N.Y. 1993) (when Plaintiffs were granted an extension under Rule 16 to depose defendant's expert, defendant's request for an extension under Rule 16 would likewise be granted because "[n]o one can predict what new information, if any, will be brought to light as a result of the expert depositions").

10

- It did not receive Avondale's FY2007 financial statements, which still have not been reviewed by Avondale's outside accountants, until December 2007;

- It did not receive the "phase 1" environmental assessments until last week, although they are clearly germane to Avondale's damages claims, including a new claim of $12 million for alleged environmental liabilities;[12]

- It did not receive documents pertaining to the division of Avondale's operating and non-operating assets until last week, documents that clearly show, for the first time, that facilities that obviously were part of Avondale's operations – *e.g.*, the Gregg warehouse – were sold off for $7.8 million although Avondale is now unjustifiably claiming they are "non-operating" and therefore providing no credit to Norfolk Southern;[13]

- Critical depositions pertaining to Avondale's liquidation did not go forward until recently;

- Taylor's deposition, in which he explained how he is now treating the liquidation, *e.g.*, treating none of the $100 million Avondale received from FM as proceeds of liquidation, did not go forward until January 11, 2008;

---

[12] Although Avondale does not contend that the $12 million for alleged environmental liabilities constitutes a separate "claim," that is precisely what it is because it adds to Avondale's total damages. Indeed, the $12 million is akin to an indemnification claim. Avondale, however, takes the position that it can recover this amount from Norfolk Southern prior to being forced to pay any of these damages for which it is responsible and, indeed, prior to any prediction concerning the actual likely cost to Avondale supported by competent expert testimony.

[13] On September 14, 2007, Norfolk Southern informed the Court that this is what appeared to be happening, but Avondale denied it. Hr'g Tr. 46:9-48:7, Sept. 14, 2007. Now, it turns out to be even worse than Norfolk Southern thought it might be, because it appears to be not just land that Avondale is subdividing and calling non-operating assets, it is an actual building (the Gregg warehouse) that Avondale operated in its business.

11

- The deposition of Avondale CEO Stephen Felker Sr. concerning Avondale's liquidation, did not go forward until earlier this week.

None of these facts has been brought about by any lack of diligence on Norfolk Southern's part.

Third, Norfolk Southern could not possibly have anticipated that on January 17, 2008, the Court would indicate the possibility of precluding any evidence of valuation as of a January 5, 2005 date. As set forth in detail in the concurrently filed Opposition to Plaintiffs' Submission Regarding Alternative Damages Theories and Valuation Date, immediately following the January 17 hearing, Norfolk Southern took the precautionary step of seeking supplemental opinions from its valuation experts as soon as possible, to guard against just the kind of tactic that Plaintiffs are now attempting, *i.e.*, to force valuations *only* based on a May 26, 2006 date. It turns out that methodologies for reaching a valuation as of May 26, 2006 are not quite as complicated as Norfolk Southern counsel believed on January 17. Thus, Drs. Robinson and Lasater include in their Supplemental Surrebuttal Reports alternative valuations for that date and Mr. Elson includes in his report further analysis that puts an absolute ceiling on Avondale's value. Norfolk Southern offers Drs. Robinson and Lasater and Mr. Elson for deposition on these issues, along with the other issues addressed in their short new reports. They can easily be deposed.[14]

## II. The Supplemental Surrebuttal Reports Are Critical To Norfolk Southern's Defense, And Refusal To Permit Them Would Violate Norfolk Southern's Due Process Right to Present Its Defense.

Norfolk Southern has a due process right to present a full defense, not a hamstrung defense, particularly when it is potentially liable for the assessment of punitive damages. "The

---

[14] The methodologies used by Norfolk Southern's experts employ their January 5, 2005 valuations, much as Taylor employed Del Genio's January 5, 2005 valuation. Drs. Lasater and Robinson and Mr. Elson have already been deposed on their original valuations, so there is nothing new to cause surprise to Plaintiffs.

12

Due Process Clause prohibits a State from punishing an individual without first providing that individual with 'an opportunity to present every available defense.'" *Philip Morris USA v. Williams,* 127 S. Ct. 1057, 1063 (2007) (quoting *Lindsey v. Normet*, 405 U.S. 56, 66 (1972)). More generally, it is a fundamental requirement of due process that a party may not be deprived of its property without a meaningful opportunity to present its case "in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976); *Doolin Sec. Sav. Bank, F.S.B. v. F.D.I.C.*, 53 F.3d 1395 (4th Cir. 1995).

The Due Process Clause creates a right "*not to lose* without a fair opportunity to defend oneself." *Edd Potter Coal Co. v. Dir., Office of Workers' Comp. Programs*, 43 F. App'x 540, 544 (4th Cir. 2002) (emphasis added) (quotation omitted). *See also Poe v. Charlotte Mem. Hosp.*, 374 F. Supp. 1302, 1310 (W.D.N.C. 1974) ("Due process normally requires that they give advance notice of the charges in sufficient detail to permit intelligent response and [a] … full opportunity to appear and be heard . . ."); *Crude Co. v. U.S. Dept. of Energy*, 189 F.R.D. 1, 3 (D.D.C. 1999) ("Only recently, with the filing of the government's current motion, was [the defendant] put on notice of the government's new theory of individual liability. Simply affording [the defendant] an opportunity to respond, as the government suggests in its motion, does not comport with the due process requirement of a full and fair opportunity to defend. Under minimum due process standards [the defendant] is entitled to discovery of the case against him."). As shown above, Norfolk Southern will be deprived of its right to meaningfully defend itself unless it is permitted to file supplemental surrebuttal reports.

First, although Norfolk Southern has not objected to Taylor's "correction" insofar as the "correction" relates to the May 26, 2006 valuation date, the "correction" raises serious and substantial issues to which Norfolk Southern's experts should have a right to respond. *See Beller*, 221 F.R.D. at 694 (if court permitted plaintiff to serve a supplemental expert report after

13

the close of discovery "it would be bound to reopen discovery to allow [defendant] time for its own expert to review the new report and formulate new opinions").[15] For example, the corrections of $86 million and $71 million (totaling $157 million), among others, call into question Taylor's competence and methodology upon which Norfolk Southern should have a right to comment. Moreover, Avondale concedes the corrections have made the Taylor report "easier to understand" and "more logical" because it has now become much clearer what Taylor is doing. Norfolk Southern's experts can therefore now see the "target" more clearly and should have a right to hone their opinions and their "presentation of contrary evidence." Indeed, in the light of Taylor's testimony on January 11, his rationale for changing his approach to the insurance proceeds (instead of crediting $86 million, he credits zero) has been articulated for the first time. He analogizes the $100 million payment as a "loan." Norfolk Southern's experts need the opportunity to explain to the jury that the "loan" analogy does not hold water.

Second, there are millions of dollars at issue in Avondale's ongoing liquidation. There is more than $25 million potentially at issue in Avondale's characterization of non-operating assets. There is $12 million at issue on environmental "accruals." There is $2 million at issue on other civil liability "accruals." Norfolk Southern has a right to present a meaningful expert defense on these and other issues pertaining to Avondale's liquidation that have only just come to light and, indeed, are still coming to light.

Third, by both ruling that valuations *must* be based upon Plaintiffs' May 26, 2006 theory and that Norfolk Southern's experts can no longer comply with such a ruling, the Court would be depriving Norfolk Southern unfairly of the opportunity to defend itself in a meaningful manner. The Court would be compelling, rather, a meaningless presentation from Norfolk Southern's

---

[15] *See also Akeva L.L.C. v. Mizuno Corp.*, 212 F.R.D. 306, 312 (M.D.N.C. 2002) (defendants entitled to submit additional expert report in response to plaintiff's untimely expert report).

financial experts on the critical and hotly-disputed issue of Avondale's value. Norfolk Southern does not believe that the Court intended on January 17, 2008 to impose such an unfair result but rather that the Court, by its clarification of its position, Hr'g Tr. 140:11-21, specifically acted to avoid that unfairness. That is the position to which the Court should now adhere. Norfolk Southern should, however, be afforded the opportunity to present valuations as of May 26, 2006 if the Court later determines that to be the only controlling date of valuation. The opinions of Drs. Robinson and Lasater and Mr. Elson in their supplemental surrebuttal reports do exactly that.

As set forth in detail above, and in the concurrently filed Opposition to Plaintiffs' Submission Regarding Alternative Damages Opinions and Valuation Date, Norfolk Southern is clearly justified in submitting these supplemental surrebuttal reports, and Plaintiffs consent to their submission. These reports would be unnecessary were it not for Taylor's eleventh-hour "correction" and Avondale's tardy production of documents necessary for Norfolk Southern to understand Avondale's liquidation. Furthermore, if the Court reverses its January 17 ruling allowing Norfolk Southern to present valuations as of January 5, 2005, Norfolk Southern is clearly entitled to present a May 26, 2006 valuation. Indeed, Norfolk Southern will be unfairly prejudiced if it is denied the right to submit these necessary supplemental surrebuttal reports. Norfolk Southern would be in no different position than if it were prohibited from offering expert reports in response to Plaintiffs' original reports in July 2006. If Norfolk Southern were denied this right it would have no meaningful possibility of expert rebuttal. Such unfair prejudice to Norfolk Southern would completely undercut *Daubert* directive concerning the "presentation of contrary evidence" and would deprive Norfolk Southern of its due process right to present a meaningful defense.

**CONCLUSION**

For the reasons stated above, Norfolk Southern respectfully requests an order allowing Norfolk Southern to submit the Supplemental Surrebuttal Reports of Dr. David T. Robinson, Dr. David B. Lasater, and Mr. Craig T. Elson, to which Plaintiffs have consented.

February 1, 2007

Respectfully submitted,

s/Ronald G. Tate, Jr.
W. Howard Boyd, Jr. (Fed. I.D. #1431)
Phillip E. Reeves (Fed I.D. #3232)
Ronald K. Wray, II (Fed I.D. #5763)
Ronald G. Tate, Jr. (Fed. I.D. #4021)
Jennifer E. Johnsen (Fed. I.D. #5427)
GALLIVAN, WHITE & BOYD, P.A.
55 Beattie Place, Suite 1200
P.O. Box 10589
Greenville, SC  29603
(864) 271-9580 (tel.)
(864) 271-7502 (fax)
hboyd@gwblawfirm.com
preeves@gwblawfirm.com
rwray@gwblawfirm.com
rtate@gwblawfirm.com
jjohnsen@gwblawfirm.com

Joe G. Hollingsworth (*pro hac vice*)
Katharine R. Latimer (*pro hac vice)*
Frank Leone, Jr. (*pro hac vice*)
Bruce J. Berger (*pro hac vice*)
Peter J. Skalaban, Jr. (*pro hac vice*)
SPRIGGS & HOLLINGSWORTH
1350 I Street, N.W.
Washington, DC  20005
(202) 898-5800 (tel.)
(202) 682-1639 (fax)

Crawford S. McGivaren, Jr. (*pro hac vice*)
CABANISS, JOHNSTON, GARDNER, DUMAS
& O'NEAL, LLP
P.O. Box 830612
Birmingham, AL  35283-0612
(205) 716-5312 (tel.)
(205) 716-5389 (fax)

John C. Duffey (*pro hac vice*)
STUART & BRANIGIN, LLP
300 Main Street, Suite 900
P.O. Box 1010
Lafayette, IN  47902
(765) 423-1561 (tel.)
(765) 742-8175 (fax)

ATTORNEYS FOR DEFENDANTS NORFOLK
SOUTHERN CORP. AND NORFOLK
SOUTHERN RAILWAY COMPANY